**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | |
|---|---|
| ALFREDO CATALAN ROSAS,     ) | Case No. EDCV 17-02315-AS |
|               ) | |
|         Plaintiff,  ) | **MEMORANDUM OPINION** |
|               ) | |
|    v.          ) | |
|               ) | |
| NANCY A. BERRYHILL,      ) | |
| Acting Commissioner of the  ) | |
| Social Security Administration,) | |
|               ) | |
|         Defendant.  ) | |
| _____) | |

**PROCEEDINGS**

On November 15, 2017, Plaintiff filed a Complaint seeking review of the denial of his application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 8-9). On March 29, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 13-14). On October 5, 2018, the parties filed a Joint Stipulation ("Joint Stip.") setting

forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 21).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On May 16, 2016, Plaintiff, formerly employed as a United States Marine (see AR 37, 220), filed an application for Disability Insurance Income, alleging an inability to work because of a disabling condition since February 1, 2016. (See AR 164-67). On May 31, 2017, the Administrative Law Judge ("ALJ"), Josephine Arno, heard testimony from Plaintiff (represented by counsel) and vocational expert Lynda Berkley. (See AR 35-53). On July 21, 2017, the ALJ issued a decision denying Plaintiff's application. (See AR 15-28). After determining that Plaintiff had severe impairments -- "lumbar spine degenerative disc disease; migraine headaches; history of traumatic brain injury; posttraumatic stress disorder (PTSD); major depressive disorder; and generalized anxiety disorder" (AR 17)[1] --, but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (AR 18-20), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light

---

[1]    The ALJ found that Plaintiff's other impairments -- glaucoma and tinnitus – were non-severe. (AR 17-18).

[2]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

work[3] with the following limitations: cannot climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, crouch and crawl; can frequently reach overhead with the bilateral upper extremities; cannot be exposed to extreme cold, vibration, unprotected height and moving mechanical parts; can understand, remember and carry out simple, routine work tasks; can occasionally interact with coworkers and supervisors; and cannot have contact with the public. (AR 20-26). The ALJ then determined that Plaintiff was not able to perform any past relevant work (AR 26), but that Plaintiff could perform jobs existing in significant numbers in the national economy and was therefore not disabled within the meaning of the Social Security Act. (AR 26-28).

Plaintiff requested that the Appeals Council review the ALJ's decision. (See AR 159). The request was denied on October 12, 2017. (See AR 1-5). Plaintiff now seeks judicial review of the ALJ's decision which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

## STANDARD OF REVIEW

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance.

---

[3]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[4]

## PLAINTIFF'S CONTENTIONS

Plaintiff alleges that the ALJ erred in failing to consider: (1) the medical evidence, specifically, the opinions of two State Agency reviewing psychiatric physicians, the findings of the Department of Veterans Affairs, and records of Plaintiff's migraine headaches, in determining Plaintiff's RFC; and (2) the testimony of Plaintiff and Plaintiff's wife in determining Plaintiff's RFC. (See Joint Stip. at 5-15, 20-28).

[4]    The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

4

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from legal error.

**A.    The ALJ Properly Considered the Medical Evidence in Determining Plaintiff's RFC**

Plaintiff asserts that ALJ failed to properly consider the opinions of two State Agency reviewing psychiatric physicians (Drs. Atkins and Loomis) and the findings of the Department of Veterans Affairs in determining Plaintiff's RFC.  Plaintiff further asserts that the ALJ failed to incorporate into Plaintiff's RFC any limitations resulting from Plaintiff's migraine headaches.  (See Joint Stip. at 5-15). Defendant asserts that the ALJ  properly considered the opinions of Drs. Atkins and Loomis, the findings of the Department of Veterans Affairs, and Plaintiff's migraine headaches in determining Plaintiff's RFC. (See Joint Stip. at 15-20).

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions." Ryan

<u>v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1201 (9th Cir. 2008)(quoting 20 C.F.R. § 404.1527(d)(3)).

1.    Drs. Atkins and Loomis

In a Mental Residual Functional Capacity Assessment dated July 11, 2016, David Atkins, Ph.D., found, <u>inter</u> <u>alia</u>, that Plaintiff was: (a) markedly limited in his abilities to carry out detailed instructions and to maintain attention and concentration for extended periods,[5] and (b) moderately limited in his abilities to understand and remember detailed instructions;[6] to perform activities within a schedule, maintain regular

---

[5]    As an explanation for the findings regarding sustained concentration and persistent capacities and/or limitations, Dr. Atkins wrote:

The MER documents MDIS that may be expected to produce symptoms in this area of functioning.  The VA has determined the clmt is 80% disabled due to the combined sxs of PTSD and TBI.  This determination is treated as a medical source opinion from a treating source.  It is not inconsistent with the preponderance of evidence; therefore, it is given controlling weight.  The alleged level of severity is supported by the medical and nonmedical file evidence. Consequently the allegations are considered consistent.  The clmt is unable to sustain concentration for up to two-hour blocks of time, even when performing simple and routine work-related tasks.  The clmt's symptoms would prevent the clmt from sustaining the mental demands associated with the performance of simple, routine taks throughout an ordinary workday/workweek.

(AR 64).

[6]    As an explanation for this finding, Dr. Atkins wrote:

The clmt alleges impairment in memory and comprehension. As summarized in FOFAE, the MER documents an MDI that may produce the alleged symptoms in this area to a moderate degree.   The the (sic) allegations in this area of psychological functioning are considered partially consistent with the objective medical evidence as well as other evidence. Based upon the preponderance of file evidence, the clmt is
(continued...)

6

attendance and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;[7] and to respond appropriately to changes in the work setting.[8]  (See AR 62-65).

In a Mental Residual Functional Capacity Assessment dated October 24, 2016, K. Loomis, M.D., found Plaintiff moderately limited in all the areas discussed in Dr. Atkins' above-referenced assessment, and used the identical explanations as those used by Dr. Atkins.  (See AR 79-82).

The ALJ addressed Dr. Atkins' and Dr. Loomis' opinions as follows:

> In determining the claimant's mental residual functional capacity, the undersigned has given partial weight to the opinions of the State agency medical consultants.  On initial

---

[6]  (...continued)
considered able to understand, retain and follow simple instructions involving at least two steps.

(AR 63-64).

[7]  As an explanation for the findings regarding social interaction capacities and/or limitations, Dr. Atkins wrote: "The claimant retains sufficient ability to maintain appropriate behavior in a context of limited peer interaction and public contact; is capable of accepting simple instructions and responding appropriately to feedback from supervisors."  (AR 65).

[8]  As an explanation for this finding, Dr. Atkins wrote: "The claimant retains sufficient ability to be aware of ordinary hazards, to make simple decisions, to utilize transportation, and to cope with the demands of a routine work-like environment."  (AR 65).

review, the State agency medical consultant determined the claimant had marked limitations in maintaining concentration, persistence, or pace (Ex. 1A). The undersigned finds that the limitation was inconsistent with the record and appeared to be based on the claimant's allegations of traumatic brain injury rather than clinical findings. The finding of moderate limitations on reconsideration is more consistent with the record, which shows generally unremarkable mental status examinations and functioning tests showing normal findings, but also takes into consideration the claimant's history in the military with evidence of traumatic brain injury and complaints of memory issues (Ex. 4A). Given the claimant's diagnosis and generally mild mental findings, the undersigned finds the claimant is able to understand, remember, and carry out simple routine work tasks. This essentially limits the claimant to simple tasks, which will avoid stress and possible exacerbation of cognitive or mental health symptoms. Additionally, due to the claimant's diagnoses of PTSD and generalized anxiety, the undersigned has limited the claimant to occasional interaction with coworkers and supervisors and no contact with the public. The undersigned notes the claimant generally interacted well with others and these limitations take into consideration his allegations of difficulties getting along with others despite no clear evidence showing such issues.

(AR 25).

As set forth below, the ALJ properly rejected Dr. Atkins' opinion that Plaintiff was markedly limited in his ability to maintain attention and concentration for extended periods by finding that opinion to be inconsistent with the clinical findings in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any physician including the treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); see also 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

The ALJ's finding that Plaintiff was moderately limited in his ability to maintain attention and concentration was consistent with the opinion of Dr. Loomis (see AR 80), as well as the medical record as a whole, which revealed normal findings on mental status examinations conducted in April, May and June, 2016 (see AR 306, 363, 366, 369), normal scores on cognitive tests for memory, calculation and recall in March and June, 2016 (see AR 355, 554), and reports of Plaintiff responding well to medication and treatment, and reporting that his symptoms were under control throughout 2016 and in February 2017 (see AR 281, 363-64, 430-32, 440-41, 589-91). See Thomas v. Barnhart, supra ("The opinions of non-treating or non-examining physicians may also

9

serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); see also Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 603 (9th Cir. 1999)("The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity.").

The Court finds that the ALJ appropriately considered and gave partial weight to the opinions of Drs. Atkins and Loomis in determining Plaintiff's RFC.

2. Department of Veterans Affairs

On April 29, 2016, the Department of Veterans Affairs ("VA") prepared a summary of Plaintiff's VA benefits ("disability rating"), (see AR 184-201), finding that Plaintiff, who was released/discharged on January 31, 2016, was totally and permanently disabled solely due to 100% combined service-disabilities. (See AR 184). With respect to the mental health issues addressed in the disability rating (which Plaintiff has specifically placed at issue, see Joint Stip. at 9), the VA wrote:

We have assigned a 70 percent evaluation for your posttraumatic stress disorder and insomnia disorder based on: • Difficulty in adapting to a worklike setting • Difficulty in adapting to stressful circumstances • Difficulty in adapting to work • Impaired impulse control • Near-continuous depression affecting the ability to function indpendently, appropriately and effectively • Difficulty in establishing

10

and maintaining effective work and social relationships •
Disturbances of motivation and mood • Flattened affect •
Impaired abstract thinking • Impaired judgment • Panic
attacks more than once a week • Occupational and social
impairment with occasional decrease in work efficiency and
intermittent periods of inability to perform occupational
tasks (although generally functioning satisfactorily, with
routine behavior, self-care, and conversation normal) •
Anxiety • Chronic sleep impairment • Depressed mood •
Suspiciousness[.] The overall evidentiary record shows that
the severity of your disability most closely approximates the
criteria for a 70 percent disability evaluation. A higher
evaluation of 100 percent is not warranted unless there is
total occupational and social impairment, due to such
symptoms as: • Gross impairment in thought processes or
communication; • Persistent delusions or hallucinations; •
Grossly inappropriate behavior; • Persistent danger of
hurting self or others; • Intermittent inability to perform
activities of daily living (including maintenance of minimal
personal hygiene); • Disorientation to time or place; memory
loss for names of close relatives, own occupation, or own
name.

(AR 193-94).

//

//

//

The ALJ addressed the VA's disability rating as follows:

The undersigned assigns little weight to the Veterans Affairs disability rating of 100%. The claimant retired from military in January 2016 with a 100% service connected disability rating. (Ex. 5F, p. 58). The VA disability rating with 70% being attributed to PTSD symptoms, zero percentage to headaches, 10% to traumatic brain injury, and 20 percent to paralysis of the sciatic nerve (Ex. 3F, pp. 31, 61). A Veteran's (sic) Affairs disability rating is a decision by a governmental agency about whether an individual is disabled based on that agency's rules (20 CFR 404.1504). It is <u>not</u> a Social Security Administration decision based on Social Security law about whether the claimant is disabled (20 CFR 404.1504). Thus a disabilty rating made by the Department of Veterans Affairs[] is <u>not</u> binding but must be considered (20 CFR 404.1504). Further, in accordance with 20 CFR 404.1527, and Social Security Rulings 96-2p, 96-5p, and 06-03p, the undersigned assigns less weight to the Veterans Affairs disability rating for the following persuasive, specific and valid reasons: the claimant's PTSD and other mental health symptoms were well controlled with conservative use of psychotropic medications and therapy with reports of improved symptoms and no need for aggressive treatment; the claimant's traumatic brain injury also did not appear to cause any significant cognitive deficits, indicating 10% is a pretty accurate reflection and would not require any major

limitations; the zero percentage for headaches appears to be inconsistent given the claimant's consistent use of medications and use of Botox medication, although there is no indication of significant limitations caused by this condition; and the 20 percent for sciatica pain appears consistent given the routine and conservative treatment and generally mild diagnostic findings. Accordingly, the undersigned gives less weight to the Veterans Affairs disability determination because it is not entirely consistent with substantial evidence.

(AR 25-26).

To the extent that Plaintiff is contending that the ALJ improperly gave less weight to the VA's finding concerning the high level of Plaintiff's disability rating attributable to Plaintiff's PTSD and other mental health symptoms, the Court finds that the ALJ properly rejected the VA's finding.[9] As set forth above, the evidence in the record reflects that Plaintiff's mental health symptoms were effectively controlled with medications and therapy (see AR 281, 355, 363, 366, 369, 430-32, 440-41, 554, 589-91). See Warre v. Comm'r of Soc. Security Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for the purpose

---

[9]    To the extent Plaintiff contends that the ALJ improperly rejected the opinions of the State Agency reviewing psychiatrists who relied on the findings of the VA (see Joint Stip. at 9-10, 12), the Court has already addressed this contention. See section A infra.

13

of determining eligibility for SSI benefits). Accordingly, the ALJ's decision to reject the VA's disability rating in determining Plaintiff's RFC was supported by substantial evidence in the record.

### 3. Migraine headaches

To the extent that Plaintiff is contending that the ALJ failed to incorporate limitations resulting from Plaintiff's migraine headaches into Plaintiff's RFC (see Joint Stip. at 12-13), Plaintiff's contention must fail. First, Plaintiff has failed to allege what limitations the ALJ failed to incorporate into Plaintiff's RFC resulting from his migraine headaches; and second, there are no opinions from any medical providers that Plaintiff's migraine headaches limited his abilities to perform light work. As the ALJ noted, ". . . [T]here is no indication of significant limitations caused by [Plaintiff's] condition [of migraine headaches]." AR 25. Plaintiff has failed to cite to any evidence in the record showing that his migraine headaches limited his abilities to perform light work (see Joint Stip. at 14, citing AR 304, 314, 323, 334 and 440). See Tacket v. Apfel, 180 F.3d 1094, 109 (9th Cir. 1999)("The burden of proof is on the claimant as to steps one to four.").

In any event, the ALJ took Plaintiff's migraine headaches and the some of the symptoms Plaintiff alleged by providing several limitations in the RFC to prevent further exacerbation of and/or the triggering of Plaintiff's headaches, such as limiting Plaintiff to light work, no more than frequent overhead reaching bilaterally with the upper extremities,

14

and no concentrated exposure to extreme cold and vibration (<u>see</u> AR 20, 24). The ALJ's determination appears to be consistent with the limitations found by State Agency reviewing physician M. Mazury, M.D., in a Physical Residual Functional Capacity Assessment dated October 26, 2016 (<u>see</u> AR 77-79).

**B.    The ALJ Properly Assessed Plaintiff's and Plaintiff's Wife's Testimony**

Plaintiff asserts that the ALJ did not provide proper reasons for finding that Plaintiff's testimony about his symptoms and limitations concerning his migraine headaches and mental impairments was not credible in assessing Plaintiff's RFC. Plaintiff further asserts that the ALJ did not provide proper reasons for finding that statements by Plaintiff's wife were not credible. (<u>See</u> Joint Stip. at 20-28). Defendant asserts that the ALJ provided proper reasons for finding Plaintiff and Plaintiff's wife not fully credible. (<u>See</u> Joint Stip. at 28-32).

1.    <u>Legal Standard</u>

A.    Plaintiff's Testimony

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine

15

the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . ." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, *3.[10]

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to

---

[10] SSR 16-3p, which became effective on March 28, 2016 and superseded SSR 96-7p, is applicable to this case because it was in effect at the time of the Appeal Council's October 12, 2017 denial of Plaintiff's request for review. 20 C.F.R. § 404.1529, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)(the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

B.    Plaintiff's Wife's Testimony

The ALJ is required to give germane reasons for rejecting or partially rejecting lay witness testimony. See Carmickle v. Comm'r v. Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Smolen, 80 F.3d at 1288-89.

2.    The ALJ's Credibility Findings

Plaintiff made the following statements in a "Function Report - Adult" dated June 1, 2016:

He lives with family in a house.  (See AR 238).

He is not able to lift, carry, push or pull more than 5 pounds.  He is not able to sit for 20 minutes or walk for more than 10 minutes.  He has chronic back pain which requires him to stretch and lie down on his back and rest at least 20 minutes.  He has chronic irritable bowel syndrome. He has difficulty with memory and concentration.  He has anxiety and depression; the medications he takes for them

17

drain his energy, slow his reflexes, make him drowsy, and impair his abilities to think and make judgments. (<u>See</u> AR 238).

On a daily basis he wakes up, stays in bed 3 or 4 hours (until his anxiety increases), gets out of bed (unless he is depressed), eats food (which his wife usually makes for him), sits in the living room and watches television for 20 or 30 minutes, obsessively (at least 20 times a day) looks out the front and rear windows of his house for 10 or more minutes, eats when his wife comes home from work, continues to do the same activities as before, and returns to bed for 2 to 3 hours before falling asleep (he takes medication to sleep). He has insomnia, wakes up 3 to 4 times a night, and sleeps an average of 4 hours a night. He does not care for other people or pets, and his wife takes care of the house chores, except he does his laundry, carrying one small, laundry basket (which takes 2 to 3 hours, maybe one time a week, with his wife reminding him). Prior to his conditions, he worked, socialized and was physically active. (<u>See</u> AR 239-41, 243).

With respect to his personal care, he dresses himself in the same clothes (his wife regularly tells him to change his clothes), he has difficulty taking showers (hard to bend without pain; his wife has to remind him to bathe), he no longer cares about cutting his hair (his wife has to remind him to cut his hair), he does not feel the need to shave because he gets anxious and cuts himself (his wife has to remind him to shave), he does not prepare his own meals or feed himself because he is anxious about cooking and does not have the patience to cook, and he has to frequently use the toilet. He can go out alone, and goes out once or twice a week either driving a car or riding a car. He goes shopping with his wife for clothes or groceries once a month for 30 minutes (he mostly stays seated at the store entrance because he suffers back pain after standing for more than 10 minutes). He is not able to pay bills, handle a savings account, or use a checkbook/money orders (his wife says he overcharges their bank account and makes double payments), but he is able to count bills. His memory and concentration problems affect his ability to handle money. He watches television daily but has difficulty watching an entire program because he cannot concentrate, is impatient, and cannot sit for long periods of time. He does not socialize. He needs reminders to go to medical appointments (he can go alone). He has problems getting along with others because he gets anxious and annoyed ("people always talk about the same things") and is argumentative. (<u>See</u> AR 239-42).

His conditions affect his abilities to lift (he can only lift 5 pounds without pain), squatting, bending, standing (he can stand for only 10 minutes), reaching, walking (he can walk for only 10 minutes), sitting, kneeling, hearing

(constant ringing in ears), stair climbing, seeing (vision has been rapidly deteriorating), memory (affected by anxiety and depression), completing tasks (getting worse bcause of his forgetfulness), concentration (affected by anxiety and depression), understanding (affected by anxiety and depression), following instructions (affected by anxiety and depression), and getting along with others (affected by anxiety and depression). He can walk for 50 yards, then has to rest for 3 to 5 minutes before he can resume walking. He can pay attention for 5 minutes, and does not finish what he starts. He does not follow written instructions well (he has to reread instructions and has trouble understanding sequencing), and he does not follows spoken instructions well (he forgets things and needs instructions to be repeated and said slowly). He does not get along with authority figures, if they are hypocrites or think they know everything or are better than others. He does not handle stress well (he gets irritated, angry and anxious), and does not handle changes in routine well. He has dreams in which he fears he is going to die. He uses a brace/splint and glasses/contact lenses daily. (See AR 243-44).

He takes Cymbalta/Duloxetine (with causes tiredness, drowsiness and loss of appetite), Gabapentin (which causes dizziness, drowsiness, fatigue, headaches and blurred vision), Amitriptyline/Maxalt (which causes dizziness, drowsiness, blurred vision, and urination problems), Melatonin (which causes a depressed mood, headaches, and irritability), and Sildenafil (which causes headaches and diarrhea). (See AR 245).

Plaintiff gave the following testimony at the administrative hearing (see AR 38-69):

He is 52 years old. He completed 2 years of college. He was in the Marine Corps for 27 years, through February 2016, at which time he was driving trucks, conducting operations, and taking care of Marines in administrative and physical conditioning capacities. He stopped working because he was not able to perform his job. A few years earlier he began experiencing headaches and pain in his lower back, upper extremities and lower extremities. Worsening pain over time made it so he had to do less physical exercise and administrative work, his lack of concentration made it difficult for him to accomplish tasks, and his loss of memory caused him to miss due dates. His PTSD, which was diagnosed in his last year in the Marine Corps, caused him to be angry, violent and aggressive. (See AR 37-41).

His pain and headaches affect his abilities to stand, to walk, to lift, to concentrate, and to do daily activities.

19

His medications make him drowsy and tired. He lacks energy and spends time lying down on his couch, and only walks to other rooms (the kitchen to eat) when his pain is not too bad. He has problems going to sleep (he takes medication), and his PTSD causes him to have nightmares (he takes medication). His abilities to stand or walk (10 or so minutes at a time) possibly are getting worse. He cannot lift more than 5 pounds because of pain in his arms and back. (See AR 41-42, 44, 46-47).

He has had 6 or 7 epidurals for his back pain. A military doctor referred him to surgery, but he had the epidurals because surgery might make his back worse. (See AR 45-46).

He has headaches daily, and he has had them for three to five years. His headaches have been increasing during the last years. He takes Amitriptyline every day. He takes Maxalt for the bad headaches; it is limited to two days a week because it causes him to black out ("I don't remember what happens before or after"). He has had a number of Botox injections, which help with the headaches, but do not take the pain away. (See AR 42-44).

After eating, he spends most of the time lying down due to back pain which goes down through his legs, especially his left leg. He leaves his house one time a week, sometimes with his wife, to shop for food. His wife has to remind him to do things around the house and to take care of himself and his clothes. (See AR 42, 44-45).

In a "Function Report - Adult - Third Party" dated June 1, 2016, Plaintiff's wife made essentially the same statements as Plaintiff, but added that Plaintiff goes to doctors appointments 3 or 4 times a month, Plaintiff is not able to count change, and that Plaintiff's condition does not affect Plaintiff's abilities to squat, kneel, and follow instructions. (See AR 230-36).

//

//

//

After summarizing Plaintiff's testimony and Plaintiff's wife's testimony (see AR 21), the ALJ made the following findings:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's and his wife's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The undersigned has reviewed and considered the complete medical history consistent with 20 CFR 404.1512(d), including evidence from the period prior to the claimant's alleged onset date (Exs. 1F - 7F). The treatment records reveal the claimant received routine, conservative, and non-emergency treatment since the alleged onset date. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.

(AR 21).

After discussing the medical evidence (see AR 21-23), the ALJ wrote:

The undersigned acknowledges the claimant has received relatively consistent medical treatment for the allegedly disabling impairments; however, the level of treatment receive (sic) is not what one would expect of a totally disabled individual, as the claimant's treatment was generally routine in nature, with the use of psychotropic medications and pain medications. . . . Moreover, there was no indication of more aggressive treatment, such as surgical intervention or referral to a neurology specialist for migraines, which further indicates this relatively conservative treatment provided good pain relief.

* * * * *

With regard to the claimant's mental health impairments, the medical evidence shows very good response with generally conservative treatment with psychotropic medications, therapy, and periodic cognitive group classes, as well as no evidence of significant cognitive deficits. Additionally, although the claimant has alleged various side effects from the use of psychotropic medications, the medical records, such as office treatment notes, do not corroborate those allegations.

Lastly, given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet, a review of the record in this

case reveals no restrictions recommended by the treating
doctor.

(AR 23-24).


After addressing the opinions of the State Agency medical
consultants and the findings of the VA (<u>see</u> AR 24-26), the ALJ addressed
Plaintiff's wife's testimony as follows:


The statements of Ms. Rosas do not establish that the
claimant is disabled. Since she is not medically trained to
make exacting observations as to dates, frequencies, types
and degrees of medical signs and symptoms, or the frequency
or intensity of unusual moods or mannerisms, the accuracy of
the testimony is not as reliable as that of a professional.
Moreover, by virtue of the relationship as a spouse of the
claimant, the witness cannot be considered a disinterested
third party witness whose testimony would not tend to be
colored by affection for the claimant and a natural tendency
to agree with the symptoms and limitations the claimant
alleges. Most important, significant weight cannot be given
to the witness's testimony because it, like the claimant's,
is simply not consistent with the preponderance of the
opinions and observations by medical doctors in this case.


(AR 26).

3.   The ALJ Properly Assessed the Statements and Testimony
     by Plaintiff and Plaintiff's Wife

Here, substantial evidence supports the ALJ's finding that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms related to his headaches and mental impairments was not fully credible.

The ALJ properly partially discredited Plaintiff's testimony concerning the limiting effects of his headaches and mental impairments based on his positive response to conservative treatment and medications (see AR 21, 23-24). See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008)("The record reflects that Tommasetti responded favorably to conservative treatment including . . . the use of anti-inflammatory medication [and] a transcutaneous electrical nerve stimulation unit . . . . Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996)("the evidence suggesting that [the claimant] responded well to treatment" supports an adverse credibility finding); Here, Plaintiff admitted that Botox injections help him with his headaches (see AR 44), and, as discussed above, medical records indicate that Plaintiff's mental health symptoms were also controlled with treatment and medication.

The ALJ found that Plaintiff's testimony about his symptoms and limitations related to his headaches and mental impairments was not fully credible because it was not supported by the objective medical

evidence (see AR 21, 24). See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects); Morgan, 169 F.3d at 600 ("Rather than determining that Morgan did not complain of concentration problems or that they did not exist in the record, the ALJ found that the examining psychologist's and treating psychiatrist's opinions were not supported by Morgan's complaints."). As the ALJ pointed out, the medical records revealed that Plaintiff's mental health symptoms were controlled with medication and therapy, and that Plaintiff's mental status examinations were unremarkable. (See AR 281, 306, 355, 363, 366, 369, 430-32, 440-41, 554, 589-91). The ALJ also noted that no treating physicians provided opinions about Plaintiff's functional limitations related to his headaches and mental impairments. (AR 24).

Plaintiff correctly asserts (see Joint Stip. at 23), that the ALJ could not discredit Plaintiff's testimony based only on the conservative treatment Plaintiff received for his headaches and mental impairments. See Childress v. Colvin, 2014 WL 4629593, *12 (N.D. Cal. Sept. 16, 2014)("There is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment."); Boitnott v.

<u>Colvin</u>, 2016 WL 362348, *4 (S.D. Cal. January 29, 2016)(explaining that "[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative' treatment of [the plaintiff's] conditions," and that the ALJ "was not qualified to draw his own inference regarding whether more aggressive courses of treatments were available for Plaintiff's conditions"). However, conservative treatment was not the only reason the ALJ gave for partially discrediting Plaintiff's testimony about his symptoms and limitations related to his headaches and mental impairments. As discussed above, the ALJ also discredited Plaintiff's statements and testimony regarding his limitations based on Plaintiff's positive response to medications and treatment, and the lack of objective evidence supporting Plaintiff's claims about his symptoms and limitations. Accordingly, any error in finding that Plaintiff's testimony was not fully credible based on the conservative treatment Plaintiff received was harmless. See <u>Carmickle</u>, 533 F.3d at 1162-63 (the ALJ's error in giving two invalid reasons for partially discrediting Plaintiff's testimony was harmless where the ALJ gave valid reasons for partially discrediting Plaintiff's testimony); <u>see also</u> <u>Tommasetti</u>, 533 F.3d at 1038 (an ALJ's error is harmless "when it is clear from the record . . . that it was 'inconsequential to the ultimate nondisability determination.'"); <u>Burch</u>, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.").

The ALJ found that the statements made by Plaintiff's wife, "like the [plaintiff's] [are] simply not consistent with the preponderance of

the opinions and observations by medical doctors in this case[,]" and declined to "give significant weight" to these statements. (AR 26). This was a germane reason to find the statements lacked credibility. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2015)(inconsistency with the medical evidence is a germane reason for discrediting the testimony of a lay witness); Lewis, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)("The ALJ properly discounted lay witness testimony that conflicted with the available medical evidence.").

The Court finds that the ALJ did not err in properly discrediting Plaintiff's symptom testimony and the statements of Plaintiff's wife in determining Plaintiff's RFC.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 27, 2019

_____
            /s/
         ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE